[No. 15707.  Department One.—June 4, 1895.]

## A. D. SMITH, Respondent, v. LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY et al., Appellants.

Malicious Prosecution—Malice—Probable Cause.—In actions for malicious prosecution the plaintiff must, in order to recover, establish not only malice but want of probable cause.

Id.—What is Probable Cause.—Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. Whether the alleged circumstances existed or not is simply a question of fact; but, conceding their existence, whether or not they constituted probable cause is a question of law. In the present case, after a review of the evidence, the court is of the opinion that the circumstances disclosed a case of probable cause.

Id.—Declarations of Agent.—Before the declarations of an agent are admissible to bind his principal the fact of the agency must be established. Evidence of the declarations of the person claimed to be such agent are inadmissible to establish the agency.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*T. C. Van Ness,* and *Van Ness & Redman,* for Appellants.

*E. M. Gibson,* and *Welles Whitmore,* for Respondent.

VAN FLEET, J.—This is an action for malicious prosecution, the complaint alleging that defendants, maliciously and without probable cause, procured plaintiff to be arrested and prosecuted upon a charge of arson before a justice of the peace; and, as a second count, charging that defendants in like manner, maliciously and without probable cause, procured and induced the district attorney of Contra Costa county to bring the same charge before the grand jury of said county with a view and purpose of having plaintiff indicted for said offense.

Plaintiff had a verdict, and from the judgment entered thereon and an order denying their motion for a new trial defendants appeal.

A number of errors are assigned as grounds for reversal.

1. It is urged that the evidence is wholly insufficient to sustain the verdict in that: 1. It does not tend to show that the prosecution of the plaintiff, either before the committing magistrate or the grand jury, was by or at the instigation or procurement of defendants, or any of them; and 2. That it does not appear that the prosecution, by whomsoever instigated, was either malicious or without probable cause.

We will first consider the second ground upon which this contention rests, since the first can be more conveniently disposed of in connection with another point. It appears, without substantial conflict, in fact largely from the evidence adduced by plaintiff on his affirma-

tive case, that the circumstances upon which the prosecution of plaintiff was based, both before the magistrate and the grand jury, were substantially these:

The estate of plaintiff's deceased wife, of which plaintiff was the administrator, was the owner of two connecting houses in the town of Crockett, in Contra Costa county, a small village situate on the line of the railroad between Port Costa and Oakland, and about two miles distant from Port Costa, upon which there was insurance in the sum of seventeen hundred dollars in the defendant companies. On the night of Monday, May 25, 1891, between 9 and 10 o'clock, the insured property was destroyed by fire under circumstances strongly indicative that the fire was of incendiary origin. The buildings were, and had been for some time, vacant. The fire originated after dark on the inside of the houses, and, upon the arrival of persons who had observed the smoke, it was found that the outer doors were locked and the escaping smoke was laden with a strong odor of burning oil or "dope." The plaintiff was a carpenter, and for some little time had been working in Oakland, but his children still remained in Port Costa, and plaintiff was in the habit of coming up to see them Saturday evenings and returning to Oakland on Sunday. On this occasion he did not return Sunday, remaining instead in Port Costa over Monday. He had been seen on the day before the fire by Mr. Cavanaugh, the next door neighbor, peering about the houses in what the latter considered a peculiar and suspicious manner; to such an extent, in fact, were the suspicions of Cavanaugh aroused that when the fire occurred, which also burned the residence of the latter, and the manner in which the fire started became known, he immediately suspected that plaintiff had set the houses on fire. About twenty minutes before the fire was discovered a witness living in Crockett, who was well acquainted with plaintiff, saw a man at the east end of the town, on the county road, walking pretty fast toward Port Costa, whom he took at the

time to be the plaintiff.    Between 9:30 and 10 o'clock
one Bartlett, living in Port Costa, whose wife had just
called his attention to the fire, came out of his door and
met plaintiff on the street in Port Costa.    He told plain-
tiff of the fire and said: "I am going right down there.
That is your building; let us go right down."    Plaintiff
answered that it was not much use hurrying.    On the
way over Bartlett hurried, but plaintiff lagged behind
and did not go all the way to the burning houses, but
left Bartlett at the foot of some stairs leading up the
side of the hill at the east end of the town, and the lat-
ter did not see him again that night.    Another witness
saw plaintiff in a saloon in Port Costa the night of the
fire.    He appeared warm and excited, or scared, and
was sweating.    C. W. Rodgers, the sheriff of the county,
asked plaintiff, two or three days after the fire, how it
occurred.    Plaintiff told him it started in some straw
in an alleyway between the buildings.    The sheriff
asked him if he had any insurance, and he said "about
six or seven hundred dollars."    There was a matured
and unpaid mortgage upon the property for some three
hundred and fifty dollars, and a demand against the
estate for some two hundred and sixty-five dollars bor-
rowed by the wife of plaintiff in her lifetime.    Besides
these amounts plaintiff was owing money on his own
account.    The appraised value of the burned premises,
as returned in the estate, was eighteen hundred dollars.
There was nothing to indicate a motive on the part of
any one other than plaintiff to burn the buildings; and,
when the circumstances of the fire became known, not
only the sheriff of the county, but a considerable num-
ber of the residents of Crockett and Port Costa, believed
and expressed the opinion that plaintiff had fired the
buildings; and the prosecuting witness so believed when
he swore to the complaint.

It further appeared that before the prosecution was
commenced all the circumstances of the case were fully
and fairly laid before the district attorney of the county;
that the district attorney advised that it was a proper

case for a prosecution and himself drafted a complaint against plaintiff charging him with arson, and directed the prosecuting witness to go before the justice and swear to the complaint and have plaintiff arrested. That, in pursuance of such advice, the complaint was sworn to and the prosecution of plaintiff had. It also appeared that, after the discharge of the plaintiff by the magistrate, the district attorney, of his own motion, took the matter before the grand jury for their investigation.

No principle is better established than that in actions for malicious prosecution the plaintiff must, in order to recover, establish not only malice, but want of probable cause. These two elements are essential, and they must concur or the action will not lie. (*Potter* v. *Seale*, 8 Cal. 220; *Anderson* v. *Coleman*, 53 Cal. 188.) "The primary question to be considered in this class of cases, as was said in *Grant* v. *Moore*, 29 Cal. 644, is the want of probable cause for the prosecution complained of, and this must be established before plaintiff can recover; and the burden of proof is upon the plaintiff." (*Jones* v. *Jones*, 71 Cal. 91.) Reasonable or probable cause has been defined to be: "A suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*Potter* v. *Seale*, *supra*, and cases there cited.) In view of these principles, and applying them to the foregoing facts, we are at a loss to understand upon what theory the learned judge of the court below denied defendants' motion for a nonsuit. We cannot readily conceive of a state of facts better calculated to arouse in the mind of any reasonable man a strong suspicion of guilt than was furnished in this case. It cannot be doubted that if, upon these acts, the plaintiff had been tried and convicted of arson in the burning of the buildings destroyed, it would be impossible to say that there was not evidence to sustain such conviction. They not only disclose a case of probable cause, but, in our judgment, they wholly negative the idea of malice. (See *Jones* v. *Jones*, *supra*.) Upon such

a state of facts the plaintiff should not have been permitted to go to the jury. "Probable cause is a mixed question of law and fact. Whether the alleged circumstances existed or not is simply a question of fact; and, conceding their existence, whether or not they constituted probable cause is a question of law. Where the circumstances are admitted, or clearly proved by uncontradicted testimony, it is the province of the court to determine the question of probable cause, and the court may order a nonsuit." (*Potter* v. *Seale, supra.*)

2. The court admitted over defendants' objection evidence as to the declarations of one McCarthy, a detective, to the effect that he was in the employment of defendants for the purpose of working up the case against plaintiff and having him prosecuted for burning the houses. This was clearly erroneous. No other evidence was offered by plaintiff, aside from these declarations, to establish McCarthy's employment by, or agency for, defendants in the premises, and the very purpose of introducing such declarations would seem to have been to prove such agency. The declarations were inadmissible for such purpose. It was incumbent upon the plaintiff to first establish the fact of agency before the declarations of the agent became admissible to bind his principal. (*Grigsby* v. *Clear Lake Co.*, 40 Cal. 396; *Savings & Loan Soc.* v. *Grichten*, 64 Cal. 521.)

The defendants denied any responsibility for, or connection with, the prosecution of plaintiff, or that McCarthy was their agent or employee for any such purpose; and, inasmuch as the evidence of such declarations was the only evidence tending directly to connect defendants with the prosecution, its admission was prejudicial error.

3. The action of the court in giving certain instructions and refusing others requested is complained of. The questions involved in the instructions given and refused are covered by what has been said above on other features of the case, and wherein the court erred

in these particulars is, we think, made sufficiently manifest without further or special consideration.

4. The objection that the damages are excessive need not be considered at this time, as the question may not arise upon another trial.

The judgment and order are reversed, and the cause remanded.

GAROUTTE, J., and HARRISON, J., concurred.