354 P.2d 34

SARWARK MOTOR SALES, INC., a Corporation, and Dan O'Meara, Appellants,

v.

Alfred WOOLRIDGE, Appellee.

No. 6511.

Supreme Court of Arizona.

July 12, 1960.

BERNSTEIN, Justice.

Appellants Sarwark Motor Sales, Inc. (hereinafter called "Sarwark") and Dan O'Meara (hereinafter called "O'Meara") appeal from a judgment of the Superior Court of Maricopa County, entered upon a jury verdict, awarding Alfred Woolridge (hereinafter called "plaintiff") actual damages in the sum of $250 and punitive damages in the sum of $5,000, and from an order denying appellants' motions for judgment notwithstanding the verdict and for a new trial. Plaintiff's complaint set forth one cause of action sounding in malicious prosecution and false imprisonment.

The record shows that on October 13, 1955 plaintiff visited the used car lot owned by Sarwark for the purpose of buying a used automobile. Forrest E. Jackson, a salesman for Sarwark, waited on plaintiff and showed him a convertible automobile, which plaintiff drove out of the lot. Plaintiff testified that Jackson had given him permission to test drive the convertible; Jackson denied that he had given such permission. Shortly thereafter, Jackson reported to O'Meara, vice-president and general manager of Sarwark, that the car was missing. O'Meara checked with the other salesmen, all of whom denied having given permission to plaintiff to remove the car. O'Meara then called the police and signed a stolen car report which led to the

Scott, Cavness & Yankee, Phoenix, for appellants.

Eugene C. Simon, and Stephen W. Connors, Phoenix, for appellee.

arrest, trial and subsequent acquittal of plaintiff.

The evidence shows that prior to his arrest, plaintiff had voluntarily returned the car to the Sarwark lot. There was also testimony that another employee of Sarwark told O'Meara, either the next day or a week later, that he recalled hearing Jackson give plaintiff permission to test drive the convertible. There was substantial conflict in the evidence as to the events that led to the arrest of plaintiff, and thereafter, and especially the part played by O'Meara. The details of the evidence need not be set forth further, in view of our decision that a new trial is necessary.

Appellants assign as error the instructions of the court relating to the element of probable cause. Their position, in sum, is that the court erroneously instructed the jury to determine the existence of probable cause, which is a question of law for the court.

The elements of a cause of action for malicious prosecution are described in Prosser, Law of Torts, § 98 (2d ed.), as follows:

"a. A criminal proceeding instituted or continued by the defendant against the plaintiff.

"b. Termination of the proceeding in favor of the accused.

"c. Absence of probable cause for the proceeding.

"d. 'Malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice."

See also 1 Harper and James, Law of Torts, § 4.1; Restatement of Torts, § 653.

■ Thus, "absence" or "want of probable cause" is a separate element of a cause of action for malicious prosecution. As stated in McClinton v. Rice, 76 Ariz. 358, 366, 265 P.2d 425, 430, the question is, did the plaintiff "show want of probable cause, one of the essentials of malicious prosecution?" Probable cause was there defined as "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense" (76 Ariz. at page 367, 265 P.2d at page 431). See also, Griswold v. Horne, 19 Ariz. 56, 165 P. 318, L.R.A.1918A, 862; Cunningham v. Moreno, 9 Ariz. 300, 80 P. 327.

With respect to the point here in issue, the Court in McClinton v. Rice, supra, stated:

"What facts are sufficient to constitute probable cause is a question of law." 76 Ariz. at page 367, 265 P.2d at page 431.

■■ The precise roles played by the court and jury in resolving this question of law as to probable cause were clearly set forth in this Court's opinion in Murphy v. Russell, 40 Ariz. 109, 9 P.2d 1020. There it was stated:

"Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court, and it cannot relieve itself of this burden by casting it upon the jury. McDonald v. A. & P. R. Co., supra; Stewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116; Ball v. Rawles, 93 Cal. 222, 28 P. 937, 27 Am.St.Rep. 174; Bell v. Keepers, 37 Kan. 64, 14 P. 542; Moore v. Northern Pac. R. Co., 37 Minn. 147, 33 N.W. 334. The only function of the jury in this respect is to determine what the actual facts were. If, therefore, taking the evidence in the strongest manner in favor of plaintiff, the court is of the opinion that as a matter of law the facts so proved constitute probable cause for the prosecution, it is its duty to instruct the jury to return a verdict in favor of the defendant. Jirku v. Brod, 42 Cal.App. 796, 184 P. 413; Brown v. Selfridge, 224 U.S. 189, 32 S.Ct. 444, 56 L.Ed. 727; Richardson v. Powers, 11 Ariz. 31, 89 P. 542. If, however, the evidence is conflicting, so that on one conclusion as to the facts drawn therefrom probable cause exists, while from another it does not, it is then for the jury to determine the true state of facts and to apply the law as laid down by the court to those facts. Ball v. Rawles, supra; 38 C.J. 505. But, in order that the jurors may do this, it is obviously necessary that the court should instruct them specifically as to what state of facts will constitute probable cause, and what will not.

\*　　\*　　\*　　\*　　\*

"There are two methods whereby the court and jury can respectively discharge their proper functions in this respect. The first, and perhaps the surer, is by the court's submitting a special verdict to the jury and then applying the law to the facts so found. De Lamater v. Little, 32 Idaho 358, 182 P. 853; Burton v. St. Paul, etc., R. Co., 33 Minn. 189, 22 N.W. 300; Helwig v. Beckner, 149 Ind. 131, 46 N.E. 644, 48 N.E. 788; Panton v. Williams, 114 Eng.Reprint 66. The second, and probably the commoner, method is for the court, by means of a hypothetical instruction, to group the facts which the evidence tends to prove, and then instruct the jury that, if they find one set of facts to have been established, they should find that there is probable cause, while, if they find the other, they should find there is not. Grant v. Moore, supra; Stewart v. Sonneborn, supra; Runo v. Williams, 162 Cal. 444, 122 P. 1082; Sweeney v. Perney, 40 Kan. 102, 19 P. 328; 38 C.J. 513." 40 Ariz. at pages 112, 113, 9 P.2d at page 1021.

See also, McDonald v. Atlantic & Pacific R. R., 3 Ariz. 96, 21 P. 338; Leeker v. Ybanez, 24 Ariz. 574, 211 P. 864.

These rules, which are clearly established in this State, are in accord with the law generally recognized and applied in other jurisdictions. Thus, the Restatement of Torts, § 673 states that "the court determines whether * * * the defendant had probable cause for initiating the proceedings * * *." The Comment to that section provides:

"The respective functions of the court and jury in determining the issue of probable cause can be exercised by them in one of two ways. The better but less usual method is to require the jury to find a special verdict setting forth the circumstances under which they find that the proceedings were initiated. Upon these findings the court then determines whether the defendant had probable cause. The usual method is for the court to charge the jury under what combination or combinations of circumstances, which may be found under the evidence, the defendant did or did not have probable cause for initiating the proceedings."

See also Prosser, supra, § 98; 1 Harper and James, supra, § 4.5.

■ In the instant case the court instructed the jury on the issue of probable cause, as follows:

"Probable cause is a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinary prudent man in believing that the accused is guilty of the offense. The test generally applied is upon the appearances presented to the defendant, which would be Mr. O'Meara in this case, would a reasonably prudent man have instituted or continued the proceeding, the proceeding being the justice court action against Mr. Woolridge. Where there is probable cause to institute a proceeding against the accused, who in this case would be Mr. Woolridge, such fact constitutes a complete and absolute defense or bar in an action for malicious prosecution.

"The accuser, in this case it would be Mr. O'Meara, is not necessarily required to verify his information where it appears to be reliable. You are instructed, Ladies and Gentlemen of the Jury, that in an action for malicious prosecution the essential elements are that there has been made a criminal charge by the defendants against the plaintiff; that the charge was made maliciously and without probable cause. If the charge was made maliciously and yet there was probable cause to believe that the plaintiff was guilty of the offense of which he was charged, there can be no recovery. If there was no probable cause and no malice, there can likewise be no recovery."

The above instructions are substantially similar to those under review in Murphy v. Russell, supra. There, as here, the plain-

tiff received judgment, based upon a jury verdict, in a malicious prosecution action. The court, as here, instructed the jury as to probable cause, in general terms which were not claimed to be incorrect. The objection was that the court delegated to the jury the duty of determining the issue of probable cause, which properly belonged to the court. In reversing the judgment and remanding the case for a new trial, this Court stated:

> "In substance, the court told the jurors that, if on the whole case they believed that the true facts were such as would cause a reasonable person to believe plaintiff was insane, probable cause existed; otherwise it did not. This left to the jury the duty of determining *as a matter of law* what facts would, and what facts would not, constitute probable cause. This was error, and necessarily highly prejudicial. Grant v. Moore, 29 Cal. 644; Eastin v. Bank of Stockton, 66 Cal. 123, 4 P. 1106, 56 Am.Rep. 77; Ball v. Rawles, supra." Emphasis in original. 40 Ariz. at pages 112–113, 9 P.2d at page 1021.

We hold that the court in the instant case similarly committed reversible error by its instructions relating to the issue of probable cause.

Plaintiff's contention that appellants waived the error in the court's instructions is not supported by the record. Appellants'

Requested Instruction 7 contained a hypothetical statement of the facts which according to appellants, would, if found by the jury, require it to conclude there was probable cause. Appellants cited Murphy v. Russell, supra, on the Requested Instruction, and upon the settlement of the instructions made a proper objection and argued to the court that the court's own proposed instruction on the

> "definition of the element of probable cause * * * under the case of Murphy vs Russell * * * is improper since the question of probable cause is a question of law and the determination of this should be presented to the jury, should be set forth in one of two matters set forth in the Murphy case, that to instruct the jury as to the legal elements of probable cause rather than to employ the method set forth in the Murphy case would be improper and would be prejudicial to these defendants."

The court replied that

> "no hypothetical question was proposed to take care of the first method, and it is my belief that defendants' instruction No. 7 is inadequate to properly cover the second method."

We recognize that the court may properly have rejected the precise form of the hypothetical statement contained in Appellants' Requested Instruction 7. This, however, does not permit an entirely different

**180**

form of instruction to be given to the jury, in complete disregard of this Court's ruling in Murphy v. Russell, supra.

■ In Stallcup v. Coscarart, 79 Ariz. 42, 51, 52, 282 P.2d 791, 797, the plaintiff there submitted a proposed instruction which this Court stated was "not entirely accurate," but because the trial court "deleted the other essential portions thereof," the court's instruction was held to be in error and the plaintiff was deemed not to have waived his right to claim such error on appeal. Indeed, on a "vital question," such as the existence of probable cause, the trial court has the obligation, on its own motion, to instruct the jury properly. See Tipton v. Burson, 73 Ariz. 144, 151, 238 P.2d 1098.

■ In the instant case appellants called to the attention of the trial court, both by their form of instruction and by their citation of Murphy v. Russell, supra, the proper form of instruction to be given to the jury on the question of probable cause. Rule 51 (a) of the Rules of Civil Procedure, 16 A.R.S., does not, as contended here by Plaintiff, require more. As stated in City of Tucson v. Koerber, 82 Ariz. 347, 357, 313 P.2d 411, 419, the purpose of Rule 51 (a)

"is to require counsel to fully inform the trial court of the basis for a litigant's position so that the court may not be led into involuntary error."

Further, because plaintiff may have led the trial court into giving the above erroneous instruction, it ill behooves him to deny the propriety of appellants' assigning the instruction as error. Thus plaintiff's Requested Instructions 5 and 6, relating to probable cause, though refused by the court, completely disregarded the form of instructions sanctioned in Murphy v. Russell, supra, and cited as authority therefor cases from other jurisdictions.

■ Plaintiff also urges that even if the verdict can not be sustained on the theory of malicious prosecution, it was proper in view of the proof offered on the cause of action for false arrest or imprisonment. We consider this contention to be without merit.

The two theories of malicious prosecution and false imprisonment were set forth in one cause of action. The form of verdict required the jury to find for or against plaintiff or appellants generally, and not as to each of the two alleged causes of action. Thus, the error which prejudiced appellants with respect to the claim based on malicious prosecution cannot reasonably be said to have been nullified by the possibility that the jury might have found in favor of the Plaintiff on the theory of false imprisonment and, in addition, might have awarded the same compensatory and punitive damages on that theory alone. See Wisniski v. Ong, 84 Ariz. 372, 329 P.2d 1097.

Such a possibility is even more remote in the instant situation where the arrest was made by a police officer. In such situation, the action for false imprisonment lies against appellants only if, as indicated in the trial court's instructions herein, the jury find "that such arrest was unlawful" and that appellant O'Meara "committed some improper act in addition to his giving information to the police officers tending to show that the plaintiff was guilty of a crime."

■ As stated in Prosser, supra, § 12:

"One who participates in an unlawful arrest, or procures or instigates it, will be liable for the consequences; but the defendant must have taken some active part in bringing about the unlawful arrest itself. There is no liability for merely giving information to legal authorities, or for identifying the plaintiff as the person wanted, or requesting a proper arrest, or swearing to a complaint before a magistrate who turns out not to have jurisdiction. The remedy in such cases, if any, is by an action for malicious prosecution."

See also, Restatement of Torts, § 37, Comment b:

"b. *Malicious prosecution and abuse of process.* One who institutes criminal proceedings against another intends to cause an arrest which is the normal incident of such proceedings. In such case, however, the actor is liable only if the confinement which the arrest involves is a part of the greater offense of instituting such proceedings without reasonable cause and for a purpose other than that for which the proceedings are provided. Therefore, unless the private prosecutor takes an active part in the service of a warrant issued in the criminal prosecution which he has instituted, his liability for the arrest is enforced only by the imposition of damages in aggravation of those recoverable for the malicious prosecution itself. This and the further fact that the private prosecution of public offenses is regarded as essential to the enforcement of the criminal law and, therefore, the private prosecutor is given the protection of an exceptionally favorable privilege, makes it necessary to state the rules which determine the liability for an arrest caused by the institution of criminal proceedings as part of the subject of malicious prosecution."

■ With respect to appellants' appeal from the order denying their motion for judgment notwithstanding the verdict, we have reviewed the record and hold that the trial court did not err in denying that motion, for the reason that there was sufficient competent, though conflicting, evidence to permit the jury to find in favor of the plaintiff on each of the material elements of his claim for relief. See Rule 50, Rules

of Civil Procedure; Casey v. Beaudry Motor Co., 83 Ariz. 6, 315 P.2d 662; Matsumato v. Arizona Sand & Rock Co., 80 Ariz. 232, 295 P.2d 850, 56 A.L.R.2d 1385.

Our disposition hereof makes it unnecessary to consider appellants' other assignments of error. The order denying appellants' motion for judgment notwithstanding the verdict is affirmed. The judgment and the order denying appellants' motion for a new trial are reversed and the action is remanded for a new trial.

STRUCKMEYER, C. J., and PHELPS, JOHNSON and UDALL, JJ., concur.